Oral argument is not to exceed 15 minutes per side. Mr. Mohamed for the appellant. Thank you. Should I proceed now? Yes, please proceed. Okay. Thank you. May it please the court. I'm Kenneth Mohamed. I'm counsel for the appellant, Mr. Thomas Brooks. The appellee I will refer to throughout my presentation as Erlanger. As the court is aware, there was an order entered in this case by a district court judge in about November 2018 on Erlanger's motion to dismiss. And the court in that order referenced a custom of inaction theory for the position of the district court who ruled on the motion for summary judgment later. As the court is aware, that the district court initially restricted the Dr. Brooks's Monell theory to only a custom of inaction theory. I would like to begin by submitting to the 2018 motion to dismiss order. I'd like to direct the court to specifically page 15 of that order. It was document 46 page ID 375. It's the 15th page of the order. In it, the plaintiff claims that Erlanger and Mr. Spiegel have deprived him of his constitutional rights to equal protection and due process and retaliation for exercising his right to free speech under the first and 14th amendments. In reply, defendant notes that the board's decisions are relevant on an inaction theory because Monell liability requires that the final decision maker adopts a this argument highlights the flaw in the instant motion. Mr. Spiegel contends that the board has the final decision making authority with regard to clinical privileges and physician discipline, whereas plaintiff alleges that Mr. Spiegel has been involved in his discipline and he has directly participated in the violation of plaintiff's rights. Thus, who bears responsibility for the revocation of plaintiff's clinical privileges and for ignoring complaints of racial discrimination are issues of fact that cannot be resolved on a motion to dismiss. But arguably, doesn't that go to the question of who's responsible for the custom, which was earlier the emphasis of the district court's opinion. When the district court start, and I'm still talking about the same order, but when he starts talking about the motion to dismiss, he's talking about what your client's lawyer at that time, not you, your client's lawyer at that time argued that there was a custom that was established that Spiegel had followed the custom of ignoring the racial discrimination complaints of your client. Well, the wording at the end and for the revocation of plaintiff's clinical privileges, he's saying is an issue of fact to be resolved. So we're trying to identify who the actor is. So he's trying to figure what he's talking to and he specifically uses the phrase final decision maker twice in this paragraph. But wouldn't that be, doesn't that relate specifically to the inaction theory? I do understand what the what the court is stating. I do understand that. But, you know, I again, I just would would represent to the court that I think the door isn't closed by the court on the final decision maker theory in this language. It is the only thing I'm trying to represent. I know you're stuck with this because you got in the case lately later. So it wasn't your response. But they so go back just to the motion and response for a second. In the motion, they specifically move to dismiss the final policy maker. And there's no response to it. Why isn't that binding under our DOE case? In other words, why haven't you at that point abandoned the theory? OK, the way that I would represent it to the court is is is like this, that the underlying claim is a 1983 claim and there are facts that support the claim. And the what I think the the court indicated is it quoted the law that basically says that in the Sixth Circuit, if a party abandons a claim by failing to raise the claim, then in their response to a motion, then it'll obviously be thrown out. But I don't think that whether or not it's Erlanger or it's final decision making authority is the claim itself. This is a fact. Do you have to identify both the claim and the actor? I do not. I believe stating Erlanger is sufficient for purposes of a complaint. The complaint is drafted with the word Erlanger listed as the bad actor. And so to state Erlanger, you know, I think it is for it can be decided later whether or not it's the board or the MEC or Spiegel. But you don't have to give the defendant notice of which party you're claiming did what? Again, this is a firing and the body as an institution fired him or discontinued his privileges. And so in that context of discontinuing privileges to say Erlanger did X, Y and Z, I believe is sufficient for pleading purposes. So and so is this is this a suit against Spiegel or the Erlanger board or both? It's a suit against the hospital itself because this was the claim against Spiegel in his official capacity. That's the only claim that survives. So that that claim in his official capacity would be the hospital itself. So that that's all that survives. The point that I make, I guess the larger point that I'm making is that the appellees state over and over again that we did not or the appellant did not. He abandoned his claim. But to state that, you know, the board or to identify who is the final policymaker or the final decision maker is a fact. It's not the claim itself. It is a fact that supports the claim. What is your current posture on what your Monell claim theory is? Final policymaker. That the final policymaker did what? OK, that essentially the board engaged in a series of acts that violated my my client's constitutional rights in retaliation for the fact that he was threatening lawsuits and other activity that they did not like. And so the MEC was given granted authority by the board to essentially run with the ball in terms of handling corrective actions with physicians. At a certain point, the board ratified the actions of the MEC and took affirmative steps to state that what the MEC did actually, they state in the record that Mr. Brooks was granted due process and that I'm looking for the exact language. That he willfully disregarded MEC's He didn't appear at a hearing or just declined it or what did he do about that? No, we would contend that that did not happen, that in the timeline, there was a letter that was sent to him that he did not receive. He was his hospital privileges were suspended before he knew about the letter. He received the letter. The letter stated that he should pick a physician, one of three to go see and to get checked out. He ultimately did it and the doctor said that he was fine. And even though they had suspended him because he didn't go to one of the three doctors. After he was cleared, they kept the suspension in place and then move the ball to say that he go to a neuropsychologist. He didn't go to the neuropsychologist, did he? He had a personal psychiatrist. He saw the psychiatrist and then he reported back that the psychiatrist and the original doctor that he was provided had both cleared him. At this point, we would contend that there was no new action on my client's part to justify the change from the original doctor that they told him to go to, to the point of changing to a neuropsychologist. There was no interaction between any of the members and my client to justify this change all of a sudden. Did he have a hearing? I'm sorry? For a hearing or did he file suit before the hearing? His 30 day hearing rights had already expired by the time he had fully understood what was going on because what happened is in the original letter, he was told that we don't really think you're impaired. We just have some concerns for a colleague. So he's handling it like, okay, these are just some concerned colleagues. He eventually goes to the doctor. He eventually tells them about the psychiatrist report, but later when they, after his 30 day hearing time had already expired, that's essentially when he finds out, no, this was actually corrective action and his appeal time had actually ran past. Mr. Muhammad, is your reply brief in summary judgment, the first time you argued that the board ratified the medical executive committee's decision? It is. And that goes back to what I was stating previously. Isn't that a problem? Why isn't that a problem? The example that I would give to the court is this, in a case, and I'm going to use a hypothetical, in a case, if there was a dispute as to whether someone pulled out a gun or pulled out a taser, if in the original complaint, it's stated that they pulled out a taser and then far later in the proceeding, you find out I understand what you're going to say, but that's different than ratification, which is a critical component, whether they used a gun or taser, wouldn't be a critical component. The claim would still be excessive force one way or the other. Whereas here, the only way you get to the board is through ratification. I think you agree with that, right? That's why you, meaning the second attorney, made this argument. Right, right. But again, I'm getting at the first issue is whether it's the MEC or whether it's the board, which one is it factually. And so I'm stating that if earlier on it is believed that there is one group from a factual standpoint and another, and it's discovered later, it's learned later that it's enough. Can you rate that in a reply brief? Don't you have to discover that in discovery and then move to amend your complaint? I mean, that's what discovery is for. And so now we're at a reply brief and summary judgment and our Carter case says that's a completely different standard and that's a little harder to meet. Right. Again, that the appellate, the appellees argued in their motion to dismiss that it was the board. They argued in their original motion for summary judgment that it was the board. They knew that it was the board. They've already always represented that it was the board. And that's why I'm stating that it's a factual matter where once it's known, yeah, they're actually right about a factual matter. A fact is a fact. It isn't something that I believe can be abandoned. You can't abandon a truthful fact. So how do you distinguish the Carter case? I didn't see any anything in your brief in front of us about Carter. And again, I just think that it is, it's essentially the argument that I'm making that I just see, I see this as a a fact matter rather than a claim matter. So I don't, I don't know if the court is following the argument that, that I think that the, that the fact that the appellate knew, I mean, the appellees knew that it was the board and they've always indicated that it was the board. If we, as the other party say, yeah, you are factually correct at a later point in time. I think that the record over time is perfected by the fact that they've been saying it all along. I see we don't have a time card. Can the clerk tell us how much time is left? Judge Moore, I do apologize. He has exhausted his time, but we are having technical difficulties with the timer. So I will revert back to the old way and I will hold up a yellow slip when there's one minute remaining and a red card when there's no time remaining. And I do apologize. No problem. And Mr. Muhammad, I think you had reserved three minutes for rebuttal. That's correct. So unless another judge has a question, since your is up for the main argument, we'll save your rebuttal time for rebuttal after your opponent speaks if that's all right with everyone. That's right. Thank you, Mr. Brock. You're on mute. Thank you, your honor. I've had trouble unmuting. May I please report? My name is Art Brock and I represent Mr. Kevin Spiegel in his official capacity and prior in his individual capacity before that claim was dropped. I will just describe our view of the procedural posture of the matter and why we have contended that the Monell claims have all been abandoned. After the Rule 12C motion, the response in the alleged bad actor was Kevin Spiegel individually and directly responsible for the suspension and termination of privileges. The decision maker was Mr. Spiegel and the cause or motive was this custom of inaction of repeated complaints of discrimination and failure to act. That was the motive, moving force or the direct causal link. That's how this case stood after the motion to plaintiff appellant had filed both his response to our motion for summary judgment and his reply in support of his own motion for summary judgment. All of those had changed. Each one of those essential elements. Now the Monell theory was final policymaker. The alleged bad actor was no longer Mr. Spiegel. It was the medical staff or the medical executive committee, depending on which group you look at. Can I ask you, Mr. Brock, look at paragraph 11 of the amended complaint, which is document 39. And by paragraph 11, I mean Roman numeral 11. Yes, your honor. It says Erlanger Health System in an attempt to deprive Dr. Brooks, and I'm shorthanding it, of his rights under the first and 14th amendments to the Constitution suspended the hospital privileges. And then in response to the motion to dismiss, he said the essence of his complaint is that Erlanger terminated his hospital privileges. Why isn't that enough to state a claim of final policymaker? Because your honor, the injury that the claim he's always asserted is the effect on his hospital privileges. And the question is, how did that happen? And then under what theory is the hospital responsible? And his assertion has always been the custom of inaction is the Monell theory, not a final policymaker theory. I mean, the question then becomes, how does the judge Phillips set out that he would have to show so that that is a viable cause of action at that point? Given the history of the case, the complaint in our respectful opinion was narrowed by the motion to dismiss the plaintiff's response to the motion to dismiss in the court's ruling, so that after that process of narrowing the actual claims in the lawsuit, what we're left with is not simply a complaint, but what has survived a motion to dismiss. Could the plaintiff have amended the complaint to specify the final decision maker theory after the decision on the motion to dismiss? The plaintiff could have filed a motion to amend, to allege that. Whether that would have been granted or our opposition to it, I don't know. The plaintiff did file a motion to amend the complaint many months later to attempt to add a title six claim. That motion was denied. Nowhere in that motion to amend was there a request to add a final policymaker Monell theory. But under rule 15, the plaintiff certainly could have amended and sought to expand this theory beyond what Judge Phillips held in the response to the motion. How were you harmed by the arguably late assertion of the final decision maker theory? Fair question, Your Honor. And what I would say, I'm trying to find my note, but so if the final, if the decision maker and bad actor is Mr. Kevin Spiegel, then we need to concentrate on Mr. Kevin Spiegel's actions and inactions, and we need to defend those. If the final policymaker is the board, we have to address all the board members, what they knew, when they knew it, and how we present that proof. So once we're past the discovery stage, we are now presented with a whole different defense to try to marshal and present a trial. And that's proceed against Mr. Spiegel only in his official capacity, or is that is the case dead there if the board goes out? See what I'm saying? I'm sorry, Your Honor. I did not understand. Can this case proceed against Mr. Spiegel solo without the board? No, Your Honor, not at this point. And there is no... Although the plaintiff claimed Mr. Spiegel was the bad actor and the decision maker, the facts of the case are that he was neither. The final decision maker, the final policymaker is indeed the board. It's reserved to the board under both statute and bylaws. So the case... Can I ask you about the facts? I'm just curious. So let me tell you what troubles me in what my review of the facts, and I'll just be curious as to your thoughts. It seemed to me the medical executive committee told Dr. Brooks he had to undergo a medical evaluation and gave him a list of three doctors. They then tried to front load it by giving the doctors things, the doctor that's evaluators. They then talked to the evaluator and tell him all the things they think are wrong with Dr. Brooks. The evaluator finds nothing's wrong with Dr. Brooks. And then you say, well, that didn't work. So you got to go see a second doctor. To me, that seems like the board's trying to set him or the executive committee's trying to set him up to fail. And that, I mean, it seems troubling. I get that he probably waived to this claim, not because of Mr. Muhammad, but because his previous counsel. But why shouldn't that at least trouble someone? A very fair question, Your Honor. What I would say is that in these two meetings with the physician, the counsel, the wellness committee, they were concerned about Dr. Brooks' mental and emotional state. That is what they said. They wanted him to go to a physician. They knew that before the first one, right? They did. And they picked the three doctors from which he could pick from, right? They did. And they told the doctor exactly what their concerns were. They did. And the doctor said, I don't have those concerns. So they say, now you got to go see another doctor. With all due respect, Your Honor, what the internal medicine physician, Dr. Halsey, reported was that from an internal medical standpoint only, he was fine as far as she was concerned. She did not address the mental or emotional examination or evaluation of Dr. Brooks. Why she didn't do that after that conversation, I do not know. That has not been discovered. But the fact is, the concern was his mental and emotional state. It was not addressed by Dr. Halsey. And therefore, the committee went back and decided, well, we will no longer seek internal medicine. We'll go to a neuropsychologist and say, we need a mental and emotional stability evaluation. This is my final question on this. But it seems to me, when I look at at least her concluding sentence, the results do not exhibit any abnormalities that present a reason that Dr. Brooks should not be able to practice medicine in his field of study from an internal medicine standpoint. And what you're saying is, the internal medicine wouldn't evaluate that. Yet, you picked the evaluators and you told her to look for these things. Cognitive impairment, irrationality, lapses in judgment, inability to maintain relationships. All of those go, to me, to exactly what you're talking about. So, I just think maybe Dr. Brooks understood. But from a layperson, someone like me, looking at it, I'm like, you picked the evaluators. You sent him there. He passes. And then you say, you got to see someone else. It smells bad. Your Honor, all I can say to that is that the request of the committee for what they wanted evaluated and what they got back from Dr. Halsey did not match. So, Dr. Halsey answered some of those issues as to his ability in internal medicine medically to practice. She did not anywhere address his emotional and mental stability. That left that area of concern open. And the medical executive committee asked them to, let's follow up with that. We want that evaluation. That's our main concern. Let's get it from a neuropsychologist. No, Your Honor, the plaintiff never went to the neuropsychologist. And I would just like to clarify for the court on the fair hearing plan that with the initial letter requesting he see a physician to evaluate his mental and emotional stability, that was not a corrective action. There was no suggestion at that point for instigation of the right to a fair hearing. When his privileges were summarily suspended later in July, that's when he was offered a fair hearing. Under our bylaws, every time there's an action or a combination of actions, he's entitled to a fair hearing. So, in July, he had 30 days. In November, when suspension was continued, he was told to review the bylaws for his rights. He had a right to a fair hearing then. And then in February, again, he was informed he had a right to a fair hearing. So, at least three times, and I believe four, there was another letter that told him he had his right to a fair hearing. And each one of those invoked a 30-day period. He was represented by counsel, at least through part of this, if not all of this. So... Did he ever have a hearing? He never requested a hearing, Your Honor. He never had one. He never requested one. So, our position is... Did he get notice of the hearing? He did. He got notice of his right to request a hearing, Your Honor. So, he never appeared. He had an informal interview with the wellness committee. He was requested to undergo the evaluation. He did not respond in time. He was summarily suspended for not responding in time. And at that time, when he was summarily suspended, he was informed of his fair hearing rights again in November and again in February. What we suggest to the court is that, through this process, that not only did we seek judgment on the final policymaker theory, plaintiff did not respond to it, which is usually a waiver. The court found the only viable theory was his custom of inaction theory under Monell, and that's what we were proceeding on. There was no other claim mentioned, suggested, brought up until in response to our motion for summary judgment. And then there's no ratification theory until the reply in support of plaintiff's motion for summary judgment that, based on that, Judge Breen, the district court was correct. Plaintiff has expressly abandoned all other claims and had, by ruling and implication, abandoned a final policymaker claim. If there are no other questions, we'll conclude our argument. Thank you. Should I begin? Yes. I want to be clear in pointing out what the appellees are trying to do. There are two sections in the rules, the bylaws, that, with regard to the procedures that should be followed for corrective actions, one is under 8.2 and the other is under 8.1. They call 8.1 a routine corrective actions, and there is a list of steps that they have to go through. I think they acknowledge that they didn't go through those steps. They violated those steps. So now they're saying, no, they actually went under 8.2, which is a summary suspension. What that one deals with is, essentially, the doctors see another of the physicians, see that he is dangerous, and then just say, look, you're just bad. Your privileges are terminated right now, immediately. They're saying that's what they went under. But, as a factual matter, that is not what happened. They met and they filed affidavits stating that they believed that there was impairment because of those occurrences that had happened. They had a meeting about it, and then they decided, this is corrective action already, when they decide to send him to the doctors. This is already corrective action. So they were proceeding under a routine corrective action, because they didn't just come to him and say, you're summarily suspended. They had steps for him to go through. And so they're trying to switch it from 8.1 to 8.2, but they clearly violated those steps. With regard to harm, they have been stating from day one that the board had the final decision-making authority. They knew it. There is nothing to do in discovery on this issue. If this case were to be remanded back and discovery were to be opened up, there would be absolutely nothing to do on that issue. They've known from the beginning that it's the board. So there is no harm to them at all for under this, you know, with regard to this final policy. But they thought based on the District Judge Phillips's order that it was the inaction theory. He only referenced the fact that the original attorney talked about it with regard to the racial discrimination claim. He does not mention the custom of inaction theory with regard to the termination claim at all. It's never mentioned. Does he talk about the termination claim at all? He does. It's referenced in the amended complaint, and it's referenced in the response to the motion to dismiss. I mean, does the District Judge Phillips's order? He does not ever assign the custom of inaction theory to that particular claim. I wish we had a lot more time. Is there a way to get more time? Oh, no. But with respect to the Ronell claim, my understanding is that the Judge Phillips is saying that the basis is the custom of not with regard to the termination of his hospital privileges claim, which is the only thing that survived. He never says it with regard to that. And so they're claiming that there is this harm, and they've been done wrong because they didn't know that the board was this final decision-maker. But they've known from day one, it's written in everything they've ever submitted. There's nothing to do in discovery on it. And even if they believe that somehow the first attorney should have put the words final policy maker in something, it would have changed nothing. They knew it, and they filed it themselves. And they can't say that there's harm. Thank you. I'm afraid your time is expired, unless another judge has a question. We appreciate the argument of both sides in this case. And the case will be submitted, and we'll issue a decision in due course. And we thank you for participating in our Zoom oral argument. Thank you, Your Honor. The clerk may adjourn court. The son of a court is now adjourned.